### RATES OF FARE TO TERRITORY ANNEXED TO A MUNICIPALITY.

Common Pleas Court of Hamilton County.

THE CITY OF CINCINNATI V. THE INTERURBAN RAILWAY & TERMINAL COMPANY ET AL.

Decided, September 17, 1913.

*Interurban Railways—Provisions of Village Relating to Fares—In the Event of Village Being Annexed to Adjacent Municipality—Authority of Village to Fix Rates of Fare Beyond Its Own Boundaries.*

Where an interburban railway accepts an ordinance passed by a village granting it the permission to lay tracks through the village, and where, by the terms of such grant, it is expressly provided as one of the conditions of the grant, "Should the village of Pleasant Ridge be annexed to the city of Cincinnati the rate of fare charged for a ride in either direction between any point in said village and the Cincinnati terminus shall not exceed five cents," said interurban railway, after annexation of the village, is bound by such a condition and can not charge more than five cents as a rate of fare.

*Alfred Bettman,* City Solicitor, for plaintiff.
*Dinsmore & Shohl,* contra.

MAY, J.

This is an action brought by the city of Cincinnati, by its city solicitor, against the Interurban Railway & Terminal Company and the Rapid Railway Company, to enjoin the defendants from charging passengers on their car or cars any rate of fare in excess of five cents for a ride in either direction between any point in that portion of the city of Cincinnati formerly constituting the village of Pleasant Ridge and the Cincinnati terminus of said cars and from charging passengers on their cars any rate of

fare in excess of five cents for a ride in either direction between any point in said territory formerly constituting the village of Pleasant Ridge and any other point in the city of Cincinnati on the line of travel of said cars.

At the hearing the following facts were proved:

In September, 1901, the village of Pleasant Ridge published an ordinance directing its clerk to give notice that the Rapid Railway Company had made application to the council of the village of Pleasant Ridge for the right to construct, maintain and operate a street railway over Montgomery road from the east corporation line to the west corporation line and that bids for the right to construct and operate said street railway would be received by council. In pursuance of said advertisement the Rapid Railway Company submitted its bid for rates of fare over its road. Nothing was said in this bid regarding the rate of fare after annexation of the village. Before the ordinance granting the Rapid Railway Company the right to construct, maintain and operate its railway along the proposed route was adopted, the bid was amended to include the offer of a five cent fare between any point in the village and the Cincinnati terminus of the road after annexation of the village, and in the ordinance passed on the 6th of November, 1901, and repassed on the 19th of November, 1901, in Section 6, where the rate of fare is set out, the following paragraph appears:

"Should the village of Pleasant Ridge be annexed to the city of Cincinnati the rate of fare charged for a ride in either direction between any point in said village and the Cincinnati terminus shall not exceed five cents."

On November 26, 1901, this ordinance was accepted by the Rapid Railway Company. The Rapid Railway Company is now owned by the Interurban Railway & Terminal Company. The village of Pleasant Ridge was annexed to the city of Cincinnati on the 6th day of November, 1912. The defendant company is charging a seven cent rate of fare as provided originally in the ordinance.

The company contends that the village of Pleasant Ridge had no authority under the statutes to insert the clause providing

for rate of fare after annexation of the village for the reason that the council of said village was without authority to fix the rate of fare beyond the limits of the village, and further that the original call for bids did not contain any mention of the rate of fare after annexation.

The sole question in this case, therefore, is, whether the village had authority to insert in the franchise this provision for the rate of fare after annexation of the village.

In the view that I take of this case, it is immaterial whether in inserting certain terms and conditions the village proceeded under Sections 3768, 3769 or 3770 of the General Code, or under Sections 9100 to 9122, inclusive, of the General Code.

Under Section 3768 of the General Code, council may prescribe the terms and conditions upon which a street railway may be constructed, and under Section 9113 of the General Code council or the county commissioners, as the case may be, may fix the terms and conditions upon which such railways may be constructed, operated, extended and consolidated. And under Section 3778 of the General Code, which was passed after the franchise in question was granted, it is expressly provided that "council of any municipality may grant a franchise on such terms and conditions as it may prescribe."

The policy of the Legislature, therefore, under all the sections relating to the construction or building of street railways, whether strictly within the limits of the municipality or interurban, was to permit council to fix the terms and conditions on which such grant should be given.

Unless, therefore, there is an express statutory provision prohibiting the council of any village or municipality from fixing the rate of fare to be charged from the village or municipality to a point outside of the village or municipality, the council may provide that a given rate of fare shall be one of the terms and conditions on which the grant is given. This necessarily follows from the ruling of the Supreme Court in the case of *Interurban Railway & Terminal Company* v. *Cincinnati,* 75 Ohio State, 196. At page 213, the court says:

"The rate of fare to be charged by a street railway company may be made one of the terms of the grant to it of the right to occupy the streets."

And in *State* v. *Dayton Traction Company,* 64 Ohio State, 272, the court affirmed the decision of the circuit court, which is found in 18 Circuit Court, 491. In the decision in the circuit court, Judge Summers, speaking for the court, held at page 500, that the council may refuse permission to a street railway to construct its roads in its streets, and may impose any conditions not in conflict with its statutory powers, that is, it can not impose conditions inconsistent with the rights granted by the state.

Inasmuch as I can not find any statutory provisions, as already stated, which prohibit the power of the village or city council to fix the rate of fare beyond the limits of the municipality or village, it necessarily follows that when the council of the village of Pleasant Ridge provided that one of the terms and conditions of the grant should be a five cent rate of fare after annexation of the village and the company accepted the franchise with this condition, that the company can not now be heard to complain and set up that this is an illegal provision.

The defendants cite in support of their contention that the provision is illegal and beyond the power of the village, the case of *Farmer* v. *Columbiana County Telephone Company,* 72 Ohio State, 526.

It is true that in that case the Supreme Court held that the city of Salem could not fix the rate to be charged by a telephone company in granting it a right to use its streets. Judge Spear, at page 532, speaking for the majority of the court, said:

"It follows from what has preceded (*i. e.*, the right to construct poles, wires, etc., was a right received from the state and not the city), that the municipality possessed nothing in the way of a valuable right to bestow upon the company. Hence the promise of the company to do what it was not, and could not by the city be required to do, was a naked promise, without consideration."

In the case at bar, however, the village of Pleasant Ridge, through its council, granted the railway company a valuable right, that is, the right to construct and operate a street railway through the village and without this right being granted the defendant railway company could not have operated its street

railroad. This distinguishes the case at bar from the ruling in the Supreme Court in *Farmer* v. *Telephone Company, ubi supra.* This view has been taken by Judge Washburn in *Elyria Traction Company*, 8 N.P.(N.S.), 85, and by Judge Kinkead in *City of Columbus* v. *Columbus Citizens Telephone Company*, 10 N.P.(N.S.), 433.

The Supreme Court of Michigan, in *Rice* v. *Detroit Railway Company*, 122 Mich., 677, held that a village had the right to fix the rate of fare to some other village or city and make this rate of fare one of the terms and conditions upon which it would give its consent to a grant to the railway company. The court said:

"It is contended that the franchise is in force only within the territorial limits of the village and does not cover territory in other townships. We do not think this contention can be sustained. The franchise is in the nature of a contract and imposes obligations upon the company which those having occasion to ride from Dearborn to Detroit have a right to enforce. The defendant saw fit to contract with the village of Dearborn for a rate outside of the limits of the village. This contract it can not repudiate."

This case was approved and followed in *Vining* v. *Detroit Railway Co.*, 133 Mich., 539, and on investigation of the Michigan statutes fails to disclose that they differ from our Ohio legislation on this subject.

It is the law generally that where a municipality's consent is necessary to the construction of a street railway upon a public street, the municipality may impose such reasonable conditions, precedent or subsequent, for the enjoyment of the franchise as it may deem necessary or proper, providing it does not exceed its constitutional or statutory power. See *Booth on Street Railroads*, 2d Ed., 29; *1 Nellis on Street Railroads*, 2d Ed., Sec. 46; *4 McQuillan on Municipal Corporations*, Sec. 1644; *3 Dillon, Municipal Corporations*, 5th Ed., Sections 1229 and 1230. The language of the text in the foregoing authoritative works is borne out by the cases cited.

In denying the right of the city to fix telephone rates in *Farmer* v. *Telephone Company, ubi supra,* the court says:

"But before leaving the subject we feel impelled to express our strong condemnation of lamentable want of fair dealing shown on the part of the defendant company in its transactions with municipal authorities.   *   *   *   If the pleadings truly state the situation the company's action was in a high degree reprehensible.   Were there any ground which this court could regard as substantial for such action the court would take pleasure in granting the relief asked for and thus administer a deserved rebuke; but there seems none."

Taking the view of the case that I have, finding that there is express authority in the statutes giving the village council power to fix, as one of the terms and conditions of the grant, the rate of fare after annexation of the village, finding nothing in the statutes expressly prohibiting this right, and finding further that the city gave to the defendant railway company a very valuable right, I necessarily must grant the relief prayed for.

A decree in accordance with this finding may be prepared.